IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff-Respondent, § | |
| § | |
| V. § | CRIMINAL ACTION NO. H-03-235 |
| § | CIVIL ACTION NO. H-08-2590 |
| EULALIO MEDRONO MORENO § | |
| § | |
| § | |
| Defendant-Movant. § | |

**MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Eulalio Medrono Moreno's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 91),[1] Movant's Memorandum in Support of § 2255 Motion (Document No. 92), the United States' Response (Document No. 97), and Movant's Reply to the United States' Response (Document No. 99). After reviewing the parties' submissions, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 91) be DENIED and that this § 2255 proceeding be DISMISSED.

---

[1]Eulalio Medrono Moreno's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-08-2590 and at Document No. 91 in Criminal Action No. H-03-325. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

**I.    Procedural History**

Movant Eulalio Medrono Moreno ("Moreno") who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Moreno's first attempt at § 2255 relief.

On June 27, 2003, Moreno was charged by Indictment with possession of counterfeit United States currency in violation of 18 U.S.C. § 472 (Count one), and illegal possession of a firearm by a felon convicted of three or more previous violent felonies in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1) (Count two). (Document No. 1). Moreno pleaded guilty to the Indictment on April 16, 2004. (Document No. 31, Transcript of Rearraignment hearing, Document No. 51).

At Moreno's April 16, 2004, Rearraignment hearing, the Court engaged in an extended colloquy to ensure that Moreno understood the charges against him, the maximum penalties, the rights he was waiving, the factual basis of the plea, and the manner in which his sentence would be calculated. (Document No. 31, Transcript of Rearraignment Hearing, Document No. 51).

Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared (Document No. 37), to which Moreno filed written objections. (Document Nos. 35, 39).[2] Pursuant to the PSR, Moreno's sentence was calculated as follows: (1) In calculating Moreno's base offense level, because Moreno had been convicted of a violation of 18 U.S.C. § 922(g)(1) and 924(e)(2), U.S.S.G. §

---

[2] Moreno objected to the mandatory application of the sentencing guidelines based on the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). In addition, Moreno objected to the application of the sentencing guidelines. In particular, objected to U.S.S.G. § 2K2.1(b)(5) because the offense was orchestrated by the informant and the Secret Service and there were no drugs to be purchased and, as such, a four level increase was not appropriate. Moreno further objected to U.S.S.G. § 4B1.4(b)(3)(A). He further objected to the absence of a three level reduction for acceptance of responsibility. According to Moreno, his base offense level should have been 24 and his total offense level should have been 21, which would have resulted in a sentencing range of 46 to 51 months.

2K2.1(a)(2) directed a base offense level of 24. (2) Because Moreno possessed a firearm in connection with another felony offense, his base offense level was adjusted upward by 4 levels. (3) (3) Because Moreno had previously been convicted of at least three prior violent felonies as defined by 18 U.S.C. § 924(e)(2)(B), and because he had been charged with 18 U.S.C. § 922(g), Moreno was an armed career criminal within the meaning of U.S.S.G. § 4B1.4, and because Moreno possessed the firearm in connection with a controlled substance (possession with intent to distribute cocaine), his offense level under U.S.S.G. § 4B1.4(b)(3)(A) was 34. (4) With an adjusted base offense level of 34, and with a criminal history category of VI, Moreno had a guideline sentencing range of 262 to 327 months.

Moreno was sentenced on August 11, 2004. (Document No. 40, Transcript of Sentencing Hearing, Document No. 65). Moreno was sentenced to a term of imprisonment of 235 months on Counts 1 and 2, to be served concurrently, to be followed by a total term of supervised release of 3 years. Also, the Court imposed a special assessment of $200, and a $3,000 fine. (Document No. 40, Transcript of Sentencing Hearing, Document No. 65, pp. 22-24). Judgment was entered on August 16, 2004. (Document No. 43).

Thereafter, Moreno appealed his conviction to the Fifth Circuit Court of Appeals. In his appeal, Moreno argued that the district court erred in sentencing him pursuant to the mandatory sentencing guidelines in light of *United States v. Booker*, 543 U.S. 220 (2005), and *Blakely v. Washington*, 542 U.S. 296 (2004). The Fifth Circuit vacated Moreno's sentence and remanded the matter for resentencing. (Document Nos. 69, 70). On remand, Judge Harmon imposed the same sentence, stating as follows:

The Court: The Fifth Circuit Court of Appeals sent the case back to me because the government could not carry its burden of showing harmless error in that I did not reveal whether I would have imposed the same sentence under an advisory guideline regime; so, we are back for resentencing.

So, anything you'd like to say before I pronounce sentence?

Mr. Bevans: Yes, your Honor. I would like to on – for the purpose of the record, I'd like to point out that we're still in a position– position that 4B1.4 is not applicable to Mr. Moreno basically because the underlying offense was counterfeiting as opposed to a crime of violence or drugs.

Also, we object to the paragraph 28 of the PSR, where it claims that Mr. Moreno aided and abettting [sic] with the intent to distribute cocaine where, in fact, that there was no cocaine.

And also we'd like to point out again to the Court, which we did earlier, that the gun – there were no bullets to the gun that he possessed.

We were here August of 2004, at which time the guideline range was 188 to 235 months for the sentence that we– we established.

Your Honor, the statute for the possession of the gun is a mandatory 15 years. So, what I would propose to the Court is that we have a guideline range of 188 months to 235 months. I ask the Court, in order to give this case closure, to sentence Mr. Moreno at the lower end of the guidelines. If not, I –I feel that I only have to appeal again.

The Court: Well, on what grounds would you appeal?

Mr. Bevans: The application of the guidelines 4B1.4. And, also, I'd like to point out one – one more fact, that Mr. Moreno – he's had a large — a lot of time, two years, to think about this. He has pointed out to me that in *U.S. v. Shepard*, which is at 125 Supreme Court 1254, 2004, the burglaries that he was charged with were in 1986 and 1987 whereas the burglary was not made a crime of violence until — for the guidelines until 1988. So, that's additional argument that we have, your Honor.

So, I – I proposed to Mr. Schultz that we go for the 188. He may want to address that.

Mr. Schultz: With respect to the objections, your Honor, I don't — Mr. Bevans, correct me if I'm wrong — I don't think there's any new objections that weren't

raised at the time of the original sentencing, other than perhaps this new case that you mentioned – that you just mentioned.

So, I think that the — at least my understanding of his objections pursuant to the 4B issue, those issues were addressed in the probation department's original response to the objections. Those responses are those responses. The Court can grant or deny the objections based on those responses. I think the responses are reasonable, accurate, cogent, etcetera.

I think the objections should be overruled this time, as they were previously. To the extent that there is a new objection — I'm not quite sure if there's a new objection or not.

Mr. Bevans: It's a new case because he was —

Mr. Schultz: Okay. But there's not a new objection. There is a new case.

I would ask the Court — to the extent that this case may raise some issue that wasn't addressed at the previous sentencing, I would ask the Court to ask probation their position on – on that, as to whether or not burglaries of a habitation and the year that they were committed and he was found guilty, whether they do or don't, in probation's opinion, count — or should count in this sentencing.

I'm — it's a new case. I mean, I haven't been brought aware of the case. I haven't researched it. I think it's something that the probation may have a ready answer on.

Mr. Bevans: Yeah. We raised it in our – our brief, and the government responded in their brief. But your —

The Court: You're talking about the appellate brief?

Mr. Bevans: Yes, the appeal, your Honor.

Mr. Schultz: Oh, okay.

Mr. Bevans: And the — the ruling from the Court, which always leaves something unanswered. And they said they would leave it up to you to determine if Mr. Moreno was a career offender – or armed career criminal. Excuse me. I always get the two mixed up.

Again, your Honor, I ask the Court to give him the 188; and we can move on.

The Court:  Well, tell me where they – oh, okay.  All right.  "We do not reach" – "In Moreno's contention that the district court erred in determining that he is an armed career criminal."

Mr. Bevans:  That's been our issue all along, your Honor.

The Court:  So, you're telling me that if I give him 188 months you won't appeal it but if — but if I give him 235 months you're going to appeal it on this issue?

Mr. Bevans:  Yes, your Honor.

The Honor:  Okay.  All right.

Mr. Bevans:  I think that he needs the closure and we need the closure.

Mr. Schultz:  I think the government – the prosecution side of the government position would be that the, for the lack of a better phrase, threat of an appeal, the intention of an appeal, I don't think an appeal is ever a good reason– or a pending appeal, possibly, is ever a good reason to sentence somebody at a certain level as opposed to another level, because there may or may not be an appeal.

I don't — I think, you know, if there's a valid point of appeal, it should be brought and the government will respond appropriately.  So, I – I would discourage the Court from sentencing this defendant, or any defendant, at a certain level because of simply the possibility of appeal.  I don't think – I know the government is not intimidated by the possibility of appeal.  I don't imagine the Court is either.

I think the Court – I'm going to leave it to the sound discretion of the Court as to what the appropriate sentence is.  I – I would suggest that the Court inquire of probation as to what their position might be on Mr. Bevans' statement of this new case regarding –

The Court:  Do you have a position, Mr. Ott, that you could tell me about right this moment or –

The Probation Officer:  All these issues have already been heard, on my opinion, at the first sentencing.  There's really nothing new.  I don't see — even though he cited – what was it, *Shepard* that you cited Mr. Bevans?

I think, you know – you know, the guidelines were correctly computed; and, so, our range is exactly what is 180 to – or, you know, 188 to 235.

Mr. Schultz:  Right.

6

>The Court: Well, okay. Thank you.
>
>My finding is going to be the same. I'm going to overrule all your objections just as I did before. I believe that a sentence within the guidelines range adequately addresses the factors set forth in 18 United States Code, Section 3553(a).
>
>I would have sentenced Mr. Moreno to the sentence I gave him before whether the guidelines had been mandatory or had been advisory; and, so, I'm going to continue and — going to sentence him to 235 months. And all other aspects of the sentence that are in the judgment will remain the same, as well. (Document No. 85, Transcript of July 21, 2006, Sentencing Hearing, pp- 2-8).

An Amended Judgment was entered on August 1, 2006. (Document No. 80). Again, Moreno appealed to the Fifth Circuit Court of Appeals. (Document No. 78). In an opinion filed August 23, 2007, the Fifth Circuit affirmed Moreno's sentence. (Document Nos. 89, 90). In affirming Moreno's conviction, the Fifth Circuit wrote:

>Eulalio Moreno pleaded guilty to counts 1 and 2 of an indictment charging him with possession of a firearm by a felon convicted of three or more previous violent felonies (count 2). Because Moreno was convicted in Texas in 1987 of burglary of a habitation and again in 1988 of three counts of burglary of a habitation, the probation officer determined that Moreno was an armed career criminal within the meaning of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4(a) (2003). Because Moreno used or possessed a gun in connection with a controlled substance offense, Moreno's total offense level was determined under U.S.S.G. § 4B1.4(b)(3)(A)(2003). The district court sentenced Moreno at the top of the guidelines imprisonment range to concurrent 235-month terms of imprisonment. Moreno appealed his sentence and this court remanded for resentencing in accordance with *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Moreno*, 183 F.Appx 437, 438 (5th Cir. 2006). On remand, the district court determined again that Moreno is an armed career criminal. The district court reimposed the same sentence. Moreno gave timely notice of his appeal.
>
>Moreno contends that the district court erred in determining that his 1987 and 1988 state convictions of burglary of a habitation were crimes of violence and that he is an armed career criminal under § 924(e) and § 4B1.4(a). He contends that the Texas offense of burglary of a habitation does not have as an element the use, attempted use, or threatened use of physical force against the person of another, that the offense is not equivalent to the enumerated offense of burglary of a dwelling, and does not by its nature, present a serious potential risk of physical injury to another person.

7

Because Moreno did not raise these issues in the district court, we review them for plain error. *See United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005). To demonstrate plain error, Moreno must show clear or obvious error that affects his substantial rights; if he does, this court has discretion to correct a forfeited error that seriously affects the fairness, integrity, or public reputation of judicial proceedings, but is not required to do so. *See id.*

In *Taylor v. United States*, 495 U.S. 575, 602 (1990), the Court held that, because the term "burglary" is variously defined by different states, the meaning of the term, for purposes of § 924(d), was limited to a "generic" definition of burglary set forth in the Court's opinion: a "crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 599. The Texas offense of burglary of a habitation is a "generic burglary" for purposes of applying § 924(e). *See United States v. Silva*, 957 F.2d 157, 162 (5th cir. 1992). *Shepard v. United States*, 544 U.S. 13 (2005), cited by Moreno, did not change the definition of "generic burglary" set forth in *Taylor*. *See* 544 U.S. at 19; *see also United States v. Garcia-Mendez*, 420 F.3d 454, 456-57 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1398 (2006).

Citing *Shepard*, Moreno argues that no evidence was presented showing that the predicate burglaries were generic burglaries. Interpreting *Shepard*, this court has held that "a district court errs when it solely relies upon the [presentence report's] characterization of a defendant's prior offenses for enhancement purposes." *United States v. Jenkins*, 487 F.3d 279, 281 (5th Cir. 2007). Because Moreno did not show that his substantial rights were affected by any error on the part of the district court in failing to require supporting documentation showing that the predicate burglaries were generic burglaries. *See id.* (citing *United States v. Ochoa-Cruz*, 442 F.3d 865, 867 (5th Cir. 20060).

Moreno contends that the district court erred in determining his offense level under § 4B1.4(b)(3)(A). Under § 4B1.4(a), a "defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." Under § 4B1.4(b)(3)(A), the offense level of an armed career criminal is 34 if he "used or possessed the firearm ... in connection with ... a controlled substance offense, as defined in § 4B1.2(b)..." The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the — possession of a controlled substance — with intent to — distribute----" § 4B1.2(b). A "'controlled substance offense' include[s] the offense of aiding and abetting, conspiring, and attempting to commit such [an] offense[]." § 4B1.2, comment. (n.1).

The probation officer determined that Moreno's offense level under § 4B1.4(b)(3)(A) because Moreno had "possessed the firearm in connection with a controlled substance

8

offense, as defined in U.S.S.S. § 4B1.2(b), namely, aiding and abetting the possession with intent to distribute cocaine ..." The probation officer reported that a confidential informant disclosed to the United States Secret Service that Moreno intended to purchase cocaine using counterfeit currency. The scheme was verified using surveillance and monitored conversations. After his arrest, Moreno gave a statement confirming his role in the drug transaction.

Moreno contends that the offenses to which he pleaded guilty, i.e, possession of counterfeit United States currency and possession of a firearm by a felon convicted of three or more previous violent felonies, were neither crimes of violence nor controlled substance offenses. Because this issue was not raised in Moreno's original appeal, it is barred under the mandate rule unless Moreno shows that the district court's ruling was clearly erroneous and will result in a manifest injustice. *See United States v. Pineiro*, 470 F.3d 200, 204-205 (5th Cir. 2006); *United Stats v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998)).

Moreno cannot show that the district court clearly erred. "[T]here is no requirement that the enhancement in § 4B1.4(b)(3)(A) be applied only when the defendant is charged with or convicted of a crime of violence. Rather, if a district court finds, based on a preponderance of the evidence, that the unlawful conduct occurred, the enhancement is proper." *United States v. Rockey*, 449 F.3d 1099, 1104 (10th Cir. 2006); *see also United States v. Guerrero*, 5 F.3d 868, 872-73 (5th Cir. 1993) (district court did not plainly err in determining that defendant convicted of being a felon in possession of a firearm had possessed the firearm in connection with an uncharged crime of violence (burglary of a habitation)).

Moreover, even if the district court did err in sentencing Moreno at level 34 under § 4B1.4(b)(3)(A), instead of at level 33 under U.S.S.G. § 4B1.4(b)(3)(B), such error would not result in a manifest injustice under the circumstances of this case. Moreno does not dispute that the uncharged drug offense would constitute a controlled substance offense under § 4B1.2(b).

Moreno contends also that the district court erred in assessing the four level increase under U.S.S.G. § 2K2.1(b)(5) (2003). Because application of the armed career criminal provision resulted in a higher offense level than the Chapter two offense level, any error in applying § 2K2.1(b)(5) could not have resulted in a manifest injustice. (Document No. 89).

9

On August 22, 2008, within one year of his conviction being final, Moreno timely filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 91), and a Memorandum in Support of his § 2255 motion (Document No. 92). In his § 2255 motion, Moreno raises a claim of ineffective assistance of appellate counsel. According to Moreno, his counsel rendered ineffective assistance when he failed to file a petition for certiorari. In support of his ineffectiveness allegation, Moreno has attached a letter written to him by appellate counsel, Thomas J. Bevans, dated July 14, 2008. In that letter, Mr. Bevans wrote, in pertinent part:

> The petition for certiorari had to be filed within 90 days of the August 23, 2007 date therefore that is lost to you unless the Court will let you file it based on my ineffective assistance of counsel. (Document No. 92, Attachment A).

The Government, in response, contends that Moreno is not entitled to relief. (Document No. 97). According to the Government, Moreno's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because Moreno is not entitled to relief. According to the Government, Moreno has not shown that his counsel was deficient nor has he shown that he was prejudiced because due process does not guarantee a constitutional right to counsel for a litigant such as Moreno seeking to file a certiorari petition in the United States Supreme Court. The Government maintains that because Moreno had no constitutional right to counsel to file the petition, he could not be deprived of effective assistance of counsel based on counsel's failure to file a petition, and even assuming that Moreno had the right to counsel to file a petition, Moreno has not shown he was prejudiced from counsel's failure to timely file a petition.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could

not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467

U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The law is well settled that the granting of a petition for writ of certiorari by the Supreme Court is discretionary. See Sup.Ct.R. 10; *Ross v. Moffitt*, 417 U.S. 600, 616-617 (1974). It is further settled that defendants have no right to counsel to pursue discretionary review. See *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Wainwright v. Torna*, 455 U.S. 586, 587 (1982). As such, Moreno did not have a constitutional right to having counsel file a writ of certiorari. *United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir. 1985) (finding claims of ineffective assistance of counsel because his attorney did not seek writ of certiorari from the Supreme Court devoid of merit.); *Valdez v. United States*, 494 F.Supp. 2d 505, 516 (W.D. Tex. 2007); *United States v. Jackson*, 2005 WL 3445585, at *7 (N.D.Tex. Dec. 15, 2005); *Washpun v. United States*, 109 Fed. Appx. 733, 735 (6th Cir. 2004); *But see United States v.* Johnson, No. 06-60303, 2009 WL 166811 (5th Cir. Jan 26, 2009). Because Moreno had no constitutional right to the assistance of counsel to pursue a petition for a writ of certiorari, he has no viable claim that his Sixth Amendment right to effective assistance of counsel was violated. While Moreno had a statutory right to continued representation of

appointed counsel for purposes of filing a petition for writ of certiorari,[3] that statutory right is not the same as a constitutional right which would entitle Moreno to relief under § 2255. Accordingly, no relief is available to Moreno under § 2255 on the ineffective assistance of counsel claims.

## V. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that Movant Eulalio Medrono Moreno's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 91) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Signed at Houston, Texas, this 11th day of March, 2009.

Frances H. Stacy
United States Magistrate Judge

---

[3] The Fifth Circuit Court of Appeal's Plan for Representation on Appeal Under the Criminal Justice Act (the CJA Plan), provides that "[p]romptly after the court of appeals decision issues, appointed counsel must advise the client in writing of the right to seek further review by filing a petition for writ of certiorari with the United States Supreme Court." CJA Plan, § 6, ¶ 4.